UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ZILIAN PANG, ZIJUAN PANG,
Petitioners,

v.

WARDEN OF IMPERIAL REGIONAL DETENTION FACILITY; *et al.*, MARKWAYNE MULLIN, Secretary of Department of Homeland Security,
Respondents.

Case No.: 3:26-cv-05047-LEK-JLB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS TO RELEASE ICE DETAINEE UNDER 28 USC § 2241**

Before this Court is Petitioners Zilian Pang and Zijuan Pang's ("Petitioners") Petition for Writ of Habeas Corpus to Release ICE Detainee Under 28 USC § 2241 ("Petition"), filed on September 6, 2026. [Dkt. no. 1.] The respondents, identified in the Petition as Warden of Imperial Regional Detention Facility and Markwayne Mullin, Secretary of Department of Homeland Security ("Respondents"), filed a return to the Petition ("Return") on September 15, 2026. [Dkt. no. 4.] On September 20, 2026, Petitioners filed a traverse ("Traverse"). [Dkt. no. 5.]

**BACKGROUND**

On February 2, 2016, Petitioners, natives and citizens of China, legally entered the United States on tourist visas. See Petition at pg. 2; see also Return, Exh. 1 (U.S. Department of Homeland Security ("DHS") Record of Deportable/Inadmissible Alien, Form I-213, dated 5/1/26 ("Zilian Pang Form I-213")) at 5; id., Exh. 2 (DHS Record of Deportable/Inadmissible Alien, Form I-213 ("Zijuan Pang Form I-213")) at 4. They applied for asylum after entering the United States, and their asylum applications

are currently pending. See Petition at pg. 2; see also id., Declaration of Zijuan Pang ("Zijuan Pang Decl.") at ¶ 6; id., Declaration of Zilian Pang ("Zilian Pang Decl.") at ¶ 6; Return, Exh. 2 (Zijuan Pang Form I-213) at 4; id., Exh. 1 (Zilian Pang Form I-213) at 5. Petitioners assert that: they are sisters; they live in Fresno, California; they regularly appeared before the immigration court; and they were scheduled to appear before the immigration court for individual hearings related to their asylum applications. See Petition at pgs. 4-5; see also id., Zilian Pang Decl. at ¶¶ 4, 10; id., Zijuan Pang Decl. at ¶¶ 4, 10. Petitioners have no known criminal history. See Return, Exh. 1 (Zilian Pang Form I-213) at 5; id., Exh. 2 (Zijuan Pang Form I-213) at 4.

Petitioners have sought and secured employment in the United States and have paid federal taxes. See Petition, Zilian Pang's Executive Office for Immigration Review ("EOIR") Submission of Evidence in Support of Bond Request ("Zilian Pang EOIR Submission") at PageID.149 (Department of the Treasury - Internal Revenue Service ("IRS"), Form W-2, Wage and Tax Statements 2020 ("Zilian Pang Form W-2"));[1] id., Zijuan Pang's EOIR Submission of Evidence in Support of Bond Request ("Zijuan Pang EOIR Submission") at PageID.183-84 (IRS, Form W-2, Wage and Tax Statements 2025 ("Zijuan Pang Form W-2s")).[2] Zijuan Pang is also a homeowner and

---

[1] The Zilian Pang EOIR Submission contains a Table of Contents with descriptions of the exhibits and corresponding starting page numbers. See Zilian Pang EOIR Submission at PageID.106. There are handwritten page numbers on the exhibits to the Zilian Pang EOIR Submission, but the exhibits are not labeled. Therefore, the citations in this Order will not use the letters assigned to the exhibits in the Zilian Pang EOIR Submission's Table of Contents.

[2] The Zijuan Pang EOIR Submission contains a Table of Contents with descriptions of the exhibits and corresponding starting page numbers. See Zijuan Pang EOIR Submission at PageID.153. There are handwritten page numbers on the exhibits to the Zijuan Pang EOIR Submission, but the exhibits are not labeled. Therefore, the citations in this Order will not use the letters assigned to the exhibits in the Zijuan Pang EOIR Submission's Table of Contents.

pays a mortgage on her home. Her adult daughter, who lives in Fresno, California, is currently helping Zijuan Pang pay for her mortgage using Zijuan Pang's limited savings. See Petition, Declaration of Diyu Wei ("Wei Decl.") at ¶¶ 1, 4; see also id., Exh. 1 (Mortgage Statements dated 6/8/26, 7/8/26, and 8/6/26, from AmeriHome Mortgage Company, LLC to Zijuan Pang).

On April 30, 2026, Border Patrol agents in unmarked Border Patrol vehicles observed Zilian Pang driving Zijuan Pang and other passengers in a Honda Odyssey, which the agents later identified to be registered to Zilian Pang. See Return, Exh. 1 (Zilian Pang Form I-213) at 3-5.[3] While the agents were driving beside the Odyssey, they observed that "PANG Zilian and the front passenger were looking straight forward and would not look over at the Agents [sic] service Vehicle." [Id. at 4.] The agents also observed that the Honda Odyssey reduced its speed and crossed the fog lines several times. [Id.] "Due to the driver's and front passengers' suspicious behavior and erratic driving behavior," the agents conducted a vehicle stop. [Id.] Thereafter, the agents took Petitioners and one other passenger into immigration custody. [Id. at 5.] Petitioners assert that they were provided no notice explaining why they were being detained nor were they presented with any administrative arrest warrant prior to their detention. See Petition at pg. 5.

On May 18, 2026, the immigration judge ("IJ") denied Petitioners' requests for release on bond and change in custody status because Petitioners failed to meet their burden to show that they were not flight risks. See Return, Exh. 5 at PageID.215-16 (Order of the Immigration Judge, dated 5/18/26 ("IJ Order for Zilian Pang")); id., Exh. 6 at PageID.220-21 (Order of the Immigration Judge, dated 5/18/26 ("IJ Order for Zijuan

---

[3] The narratives in Petitioners' Form I-213s are nearly identical and similarly recount Petitioners' detention on April 30, 2026. Compare Return, Exh. 1 (Zilian Pang Form I-213) at 3-5, with id., Exh. 2 (Zijuan Pang Form I-213) at 2-4.

Pang" and collectively the "5/18 IJ Orders")). On August 26, 2026, the Board of Immigration Appeals ("BIA") affirmed the immigration court's decisions to deny Petitioners' request for release on bond and custody redetermination. See Return, Exh. 7 at PageID.225-26 (BIA Order, filed 8/26/26 ("BIA Order for Zilian Pang")); id., Exh. 8 at PageID.230-31 (BIA Order, filed 8/26/26 ("BIA Order for Zijuan Pang" and collectively the "8/26 BIA Orders")). As of the filing of the Petition, Petitioners were detained at the Imperial Regional Detention Facility in Calexico, California. See Petition at pg. 2.

Petitioners' primary argument is that they were illegally detained in violation of their due process rights. See id. at pgs. 6-10. They also argue that their continued detention is unlawful, in that the 5/18 IJ Orders and the 8/26 BIA Orders violated their due process rights.[4] See id. at pgs. 10-13. Petitioners also assert that their detention violates a "detention statute," [id. at pg. 5 (emphasis omitted),] which this Court construes as Petitioners' argument that their detention violates the Immigration and Nationality Act ("INA"). Petitioners allege they are entitled to, *inter alia*, immediate release. See id. at pg. 14.

Respondents urge this Court to dismiss the Petition. See Return at 5. They argue that: 1) the IJ correctly placed the burden of proof on Petitioners to each establish that she does not pose a flight risk; 2) the 5/18 IJ Orders were not erroneous, arbitrary, or abuses of discretion; and 3) the 8/26 BIA Orders did not violate Petitioners' due process rights. See id. at 4-5. Respondents do not expressly rebut Petitioners' assertion that they were detained without notice or without being presented with administrative arrest

---

[4] Petitioners assert that "Petitioners' Fourth Amendment Rights Were Violated." [Petition at pg. 10 (emphasis omitted).] However, other than a conclusory allegation that "they were detained without probable cause in violation of the Fourth Amendment of the U.S. Constitution," [id. at pg. 4,] Petitioners fail to advance any argument in support of their Fourth Amendment claim in either the Petition or the Traverse. This Court therefore does not address any claim arising out of the Fourth Amendment in the instant Order.

warrants. Respondents do, however, attach two administrative arrest warrants, both dated May 1, 2026, naming Petitioners. See id. at 1 (citing Return, Exh. 3 (DHS Warrant for Arrest of Alien, Form I-200, dated 5/1/26 ("Zilian Pang Form I-200")); Exh. 4 (DHS Warrant for Arrest of Alien, Form I-200, dated 5/1/26 ("Zijuan Pang Form I-200"))).

## STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his or her confinement pursuant to Title 28 United States Code Section 2241. See 28 U.S.C. § 2241(a); Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. See 8 U.S.C. § 1252(a)(1), (5); see also Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process - for example, a claim of indefinite detention - federal habeas corpus jurisdiction remains in the district court. See Alvarez v. Sessions, 338 F. Supp. 3d 1042, 1047-48 (N.D. Cal. 2018) (citations omitted); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1076 (9th Cir. 2006).[5]

## DISCUSSION

The Petition challenges both the manner in which Petitioners were taken into custody on April 30, 2026 and the bond proceedings that followed. Because this Court concludes that Petitioners' initial detention was unlawful and that release is the only adequate remedy, this Court does not reach Petitioners' challenges to the 5/18 IJ Orders and the 8/26 BIA Orders.

---

[5] Nadarajah was abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018), as recognized by Esquivel-Ipina v. LaRose, 812 F. Supp. 3d 1073, 1077 (S.D. Cal. 2025).

**I. Framework Governing Petitioners' Detention**

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citation omitted). This protection applies to noncitizens as it does to United States citizens. See Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("[E]ven aliens shall not . . . be deprived of life, liberty or property without due process of law.").

Petitioners' detention is governed by Title 8 United States Code Section 1226(a) because they were admitted into the United States on tourist visas. See Return, Exh. 1 (Zilian Pang Form I-213) at 5; id., Exh. 2 (Zijuan Pang Form I-213) at 4; Return at 1-2 ("Petitioners are currently detained at the Imperial Regional Adult Detention Facility under 8 U.S.C. § 1226(a) awaiting completion of their removal proceedings." (citation omitted)); see also Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1167 (9th Cir. 2026) ("the aliens subject to § 1226 include other aliens, such as admitted aliens who overstay or violate the terms of their visas" (citation and internal quotation marks omitted)).

Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Title 8 United States Code Section 1357(a)(2), in turn, provides that an immigration officer may

> arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be

> taken without unnecessary delay for examination before an officer of the Service[6] having authority to examine aliens as to their right to enter or remain in the United States.

Section 1357(a)(2)'s "'reason to believe' requirement is the equivalent of 'the constitutional requirement of probable cause.'" M-J-M-A- v. Hermosillo, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026) (quoting Tejeda-Mata v. Immigr. Naturalization Serv., 626 F.2d 721, 725 (9th Cir. 1980)).

> Under 8 C.F.R. § 287.3(c)-(d), following a warrantless arrest an officer must promptly advise the individual of the reasons for arrest and of the right to representation. Within 48 hours, the government must determine whether the person will remain in custody or be released on bond, and whether a Notice to Appear and warrant of arrest will issue. Id. § 287.3(d). Only in the event of an "emergency or other extraordinary circumstance" may that determination be delayed, and then only "within an additional reasonable period of time." Id.
>
> Few courts have interpreted what constitutes an "additional reasonable period of time" under Section 287.3. In Turkmen v. Ashcroft, noncitizen detainees arrested in the wake of the September 11, 2001 attacks alleged that delayed service of Notices to Appear violated their due process rights. No. 02-CV-2307 (JG), 2006 WL 1662663, at *1, *45 (E.D.N.Y. June 14, 2006), *aff'd in part, vacated in part, and remanded*, 589 F.3d 542 (2d Cir. 2009). After their respective arrests, two plaintiffs were not served with Notices to Appear for sixteen days, one for seven days, and another for five days. Id. at *45. The district court rejected their claim, holding that the September 11 attacks qualified as an "extraordinary circumstance" and that delays of several days were reasonable in that context. Id. at *45. The court cautioned, however, that "[t]here is no doubt that at some point after arrest, an alien's due process rights would be violated

---

[6] "The Immigration and Naturalization Service, or 'INS,' was dissolved in 2002 by the Homeland Security Act, Pub. L. No. 107-296 § 101(a) (2002). Under the Act, most of the INS's functions were transferred to various components of the newly constituted Department of Homeland Security ('DHS')." Al Mutarreb v. Holder, 561 F.3d 1023, 1024 n.1 (9th Cir. 2009).

> if he were detained without being served a Notice to Appear." Id. at *46 (emphasis omitted).

Marin v. Noem, Case No. 2:25-cv-09343-CV (SSCx), 2025 WL 3158094, at *3 (C.D. Cal. Oct. 4, 2025) (alteration in Marin).

**II. Petitioners' Detention**

It is undisputed that Petitioners were detained without a warrant. Border Patrol agents stopped the vehicle that Zilian Pang was driving on April 30, 2026 and took Petitioners into immigration custody that day. See Return, Exh. 1 (Zilian Pang Form I-213) at 4-5. Petitioners assert that they were not presented with an administrative arrest warrant before they were detained, see Petition at pg. 5, and Respondents do not contend otherwise. The only warrants in the record are the Zilian Pang Form I-200 and the Zijuan Pang Form I-200, both of which are dated May 1, 2026, *i.e.*, the day after Petitioners were detained. See Return, Exh. 3 (Zilian Pang Form I-200); id., Exh. 4 (Zijuan Pang Form I-200). Petitioners' respective detentions were therefore lawful at their inception only if the arresting agents had reason to believe that each Petitioner was likely to escape before a warrant could be obtained. See 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii).

Assuming, without deciding, that the agents had reason to believe that Petitioners were present in the United States in violation of the immigration laws, the record is devoid of evidence that either Petitioner was likely to escape before a warrant could be obtained. Respondents present no argument that the agents made such a determination. See generally Return. The narratives in Petitioners' Form I-213s describe the agents' observations of the vehicle and its occupants before the traffic stop, but they do not reflect any assessment of whether Petitioners were likely to escape. See Return, Exh. 1 (Zilian Pang Form I-213) at 3-5; id., Exh. 2 (Zijuan Pang Form I-213) at 2-4.

On the contrary, the record contains ample evidence supporting the inference that Petitioners were not likely to escape. Petitioners have lived in the United States since 2016 and have no known criminal history. See Return, Exh. 1 (Zilian Pang Form I-213)

at 5; id., Exh. 2 (Zijuan Pang Form I-213) at 4. They have pending asylum applications, they regularly appear before the immigration court, and they were scheduled to appear for individual hearings on their asylum applications. See Petition at pgs. 2, 5; id., Zilian Pang Decl. at ¶¶ 6, 10; id., Zijuan Pang Decl. at ¶¶ 6, 10. Petitioners have also been employed and have paid federal taxes, see id., Zilian Pang EOIR Submission at PageID.149 (Zilian Pang Form W-2); id., Zijuan Pang EOIR Submission at PageID.183-84 (Zijuan Pang Form W-2s), and Zijuan Pang owns a home, see id., Wei Decl. at ¶¶ 1, 4. The Border Patrol agents' belief that Petitioners were present in the United States unlawfully does not in and of itself result in an assumption that Petitioners were likely to escape before a warrant could be obtained. See A.B.D. v. Wamsley, Civ. No. 6:25-cv-02014-AA, 2026 WL 178306, at *12 (D. Or. Jan. 22, 2026) ("Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by [U.S. Immigrations and Customs Enforcement ('ICE')]. Such a reading would render the limitations on warrantless arrest created by . . . § 1357(a)(2) meaningless." (ellipsis in A.B.D.) (quotation marks and citation omitted)).

Accordingly, this Court concludes that Petitioners' detention without a warrant violated Section 1357(a)(2). See Gomez v. Wofford, Case No. 1:26-cv-05299 (VC), 2026 WL 2065708, at *2-3 (E.D. Cal. July 16, 2026) (ordering that the petitioner be immediately released after concluding that the petitioner's detention was governed by Section 1226 and that no exceptions for a warrantless arrest under Section 1357(a)(2) applied).

Petitioners have already received bond hearings, and both the IJ and the BIA have concluded that Petitioners should remain detained. See Return, Exh. 5 at PageID.215-16 (IJ Order for Zilian Pang); id., Exh. 6 at PageID.220-21 (IJ Order for Zijuan Pang) ; id., Exh. 7 at PageID.225-26 (BIA Order for Zilian Pang); id., Exh. 8 at PageID.230-31 (BIA Order for Zijuan Pang). Those proceedings, however, addressed whether Petitioners' continued detention was warranted, not whether Petitioners were

lawfully detained in the first instance. Although a post-deprivation hearing may determine whether continued detention is presently justified, "a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (citation omitted). Neither the bond hearings that Petitioners have received nor any further bond hearing would remedy the Fifth Amendment violation that Petitioners have already experienced. Only release from detention can accomplish that now.

## CONCLUSION

For the foregoing reasons, Petitioners Zilian Pang and Zijuan Pang's Petition for Writ of Habeas Corpus to Release ICE Detainee Under 28 USC § 2241, filed September 6, 2026, is GRANTED.

Respondents are ORDERED to present Petitioners with the following options for their release: 1) immediate release in this District, no later than **twenty-four hours** after the filing of this Order; or 2) release in or near Fresno, California by **October 6, 2026.** Respondents are also ORDERED to return to Petitioners all of their belongings immediately upon their release.

Further, Respondents are ENJOINED AND RESTRAINED from: re-detaining Petitioners unless Respondents demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that Petitioners present a flight risk or danger to the community such that their physical custody is legally justified; placing Petitioners in an Alternative to Detention program; and from placing an ankle monitor on Petitioners upon their release.

The parties are ORDERED to file a joint status report by **October 13, 2026**, confirming that Petitioners have been released and that their belongings have been returned.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 29, 2026.

/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**<u>ZILIAN PANG ET AL. VS. WARDEN OF IMPERIAL REGIONAL DETENTION FACILITY ET AL.</u>; CASE NO. 3:26-CV-05047-LEK-JLB; ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS TO RELEASE ICE DETAINEE UNDER 28 USC § 2241**